IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BELLANCA WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-34-G-BN |
| | § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Bellanca Wilson filed a *pro se* complaint alleging discrimination, workplace sexual harassment, and retaliation. *See* Dkt. No. 3. Her case was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish.

Counsel subsequently appeared to represent Ms. Wilson. *See, e.g.*, Dkt. Nos. 13, 33, & 34. Defendant Dallas Independent School District ("DISD") ultimately moved for summary judgment on all claims brought by Ms. Wilson. *See* Dkt. Nos. 58, 59 (brief), & 60 (appendix ("App.")). The Court entered an order requiring that Ms. Wilson file a written response to DISD's summary judgment motion by September 27, 2019. *See* Dkt. No. 61. And, although the parties jointly moved to extend and then stay the mediation deadline in this matter, *see* Dkt. Nos. 62-65, Ms. Wilson never responded to the summary judgment motion, and the deadline to do so passed months ago, *see* Dkt.

No. 61.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss Ms. Wilson's claims with prejudice.

## Applicable Background

Through an unsworn complaint, Ms. Wilson alleges the following facts:

5. Plaintiff was employed by the defendant for the 2015-16 school year as a teacher assigned to Fred Florence Middle School.
6. During the 2015-16 school year, Ms. Wilson was harassed by Geronimo Santos, an Assistant Principal at the school. The incidents constituting harassment included, but are not limited to:
    a. Mr. Santos touching and patting Ms. Wilson in various places on her body, including her chest and other private places;
    b. making sexual innuendos toward her;
    c. making sexual invitations to her; and
    d. flashing or showing her his underwear (boxers).
7. Ms. Wilson filed an administrative complaint, a grievance, and a request for a transfer as a result of the harassment she was receiving from Mr. Santos.
8. In April 2016, DISD retaliated against her for making her complaints and reports about the harassment by notifying her that it intended to terminate her employment with the district at the end of the 2015-16 school year.
9. Ms. Wilson was assaulted by students on numerous occasions, but the district provided her with no support in retaliation for filing her complaints and reports.
10. As a result of fear for her safety, Ms. Wilson resigned from her employment prior to the end of the 2015-16 school year.

Dkt. No. 3 at 2.

## Legal Standards

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden*

*v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence

supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of

evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While the Local Rules in this district do not require the parties to submit statements or counter-statements of undisputed facts, where a movant cites a fact that a non-movant does not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 2:04-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

And, while Ms. Wilson has not responded to DISD's motion for summary judgment, and her failure to respond does not permit the Court to enter a "default" summary judgment, the Court is permitted to accept DISD's evidence as undisputed. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). Ms. Wilson's failure to respond, moreover, means that she has not designated specific facts showing that there is a genuine issue for trial on any of her claims. "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Here, the pleadings are not verified, and, therefore, Ms. Wilson has presented no summary judgment evidence, and, for that reason, too, the Court is allowed to accept DISD's facts as undisputed. *See Estate of Newton ex rel. Newton v. Grandstaff*, No. 3:10-cv-809-L, 2012 WL 3013929, at *2 (N.D. Tex. July 20, 2012).

## Analysis

I. <u>Sex Discrimination</u>

Liberally construed, Ms. Wilson's discrimination claim based on sex appears to be that DISD failed to renew her contract as a probationary teacher based on sex.

"Title VII prohibits discrimination 'because of' a protected characteristic, including" sex. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216, 219 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)). And, in the absence of direct evidence, like here, Title VII discrimination claims are analyzed under the framework set out by the United

States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under which a plaintiff must first establish a prima facie case of discrimination before the case may proceed. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Outley*, 840 F.3d at 216, 219.

> To establish a prima facie claim of discrimination, a plaintiff must show that he
>
> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Id.* at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Outley*, 840 F.3d at 216.

Ms. Wilson fails to establish a prima facie case of sex discrimination. Even if the Court assumes that she has established the first three prima facie requirements – that, as "a member of a protected class," she "was qualified for the position at issue" and suffered an adverse employment action – Ms. Wilson still has not established the fourth requirement by showing that she "was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556. She has come forward with no competent summary judgment evidence to show that a particular male employee in her position and "under nearly identical circumstances" was treated more favorably. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

The Court should therefore grant DISD summary judgment on this claim and dismiss Ms. Wilson's sex discrimination claim with prejudice.

II. <u>Hostile Work Environment Sexual Harassment</u>

Ms. Wilson alleges that she was sexually harassed by Geronimo Santos, an assistant principal at the school to which she was assigned. While DISD seems to admit that Mr. Santos can be considered a supervisor, there is no evidence that Mr. Santos was a decision-maker in the decision not to renew Ms. Wilson's contract. *See* App. 196 (Harris Dec. ¶ 13); App. 186 (Walker Dec. ¶ 22). This claim should therefore be construed as a hostile work environment claim.[1]

> Such a claim "based on sex may be a violation of Title VII" and
> 
> occurs when the plaintiff proves she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). And the Supreme Court, in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), "modified this test with respect to cases where the

---

[1] *See Garner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 322 n.1 (5th Cir. 2019) ("Even when a supervisor is the harasser, liability flows from agency principles that render the employer liable. One of those situations is when a supervisor's harassing behavior resulted in an adverse 'tangible employment decision.' ... Absent that type of employment consequence, the company will be liable for a supervisor's harassment only 'if the employer is unable to establish an affirmative defense' that considers whether the employer took preventative or corrective measures to combat the harassment." (citations omitted)); *see also Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 541-42 (N.D. Tex. 2018).

alleged harasser is a supervisor with immediate or higher authority over the harassed employee." *Holmes*, 304 F. Supp. 3d at 542 (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)). "In such cases, the employee need only meet the first four elements of the test. If a plaintiff can prove the first four elements, an 'employer is subject to vicarious liability to a victimized employee.'" *Id.* (quoting *Watts*, 170 F.3d at 509 (quoting, in turn, *Faragher*, 524 U.S. at 807)).

Focusing on the fourth element of this claim,

> [t]he relevant standard ... is whether the sexual harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). The harassment must consist of more than "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." *Faragher*, 524 U.S. at 788 (internal citation and quotation marks omitted). Relevant factors are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

*Royal*, 736 F.3d at 401(citation modified).

Ms. Wilson, during her deposition, reported seven incidents implicating Assistant Principal Santos, of which she raised only those encompassing numbers one and two below with DISD during her employment:

> 1. On one occasion in February 2016, he poked her in the arm and the side of her left breast with a walkie-talkie antenna. App. 52-53 (Pl. Dep. 208:4-209:8).
> 2. He patted her on the forearm or touched her arm when speaking to her, particularly during meetings with [Principal Dawn] Walker when they were coaching Plaintiff on her performance issues. App. 39-40 (Pl. Dep. 156:1-158:21).
> 3. On one occasion, Walker called Santos into a meeting with

-11-

> Plaintiff. Santos had just come from the restroom and was still zipping up his pants exposing his boxers, but not his genitals. App. 42, 46 (Pl. Dep. 167:10-168:2; 184:16-22).
> 
>     4. On one occasion, she felt "put on the spot" to hug Santos when Walker told them that they needed to get along, and Santos held his arms open for a hug. Her breasts were pushed against his chest, and she felt this was inappropriate. App. 40-41 (Pl. Dep. 159:15-162:23).
> 
>     5. During her morning duty in a hallway outside the gym, Santos would stop to make small talk. If she was wearing lipstick, he would stare at her lips and sometimes adjust his groin. App. 40-42 (Pl. Dep. 159:23-167:9).
> 
>     6. One time during a meeting with Santos and [Assistant Principal Danny] Colbert, Santos provided an example of how she could complete demonstrations for her class. He used an example about "big balls and small balls" which she thought was irrelevant because she does not use balls in her class. However, she admits Santos did not reference the male anatomy, and he could have been referencing sports related balls (i.e., basketballs). App. 63-64 (Pl. Dep. 250:25-254:18).
> 
>     7. On the day Plaintiff resigned, Santos walked by Plaintiff's classroom door and made eye contact before walking away. App. 59 (Pl. Dep. 234:5-235:23).

Dkt. No. 59 at 27-28 (footnote omitted; further citing App. 50, 135-136 (Pl. Dep. 197:4-198:9; 198:22-199:12 and Ex. 31)).

The undisputed evidence reflects that the first two instances set out above in fact may constitute three separate occurrences – on February 16, February 22, and February 23, 2016. *See* App. 135-136.

And, if the Court were to find that Ms. Wilson has established the other applicable (first three) prima facie elements, each above-enumerated incident is not "sufficiently severe" itself; but, together, a material fact may exist as to whether Mr. Santos's conduct toward Ms. Wilson was "sufficiently ... pervasive to alter the conditions of [her] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67 (citations and internal quotation marks omitted; emphasis added); *see,*

*e.g., Higgins v. Lufkin Indus., Inc.*, 633 F. App'x 229, 235 (5th Cir. 2015) (per curiam) ("Such infrequent conduct is not 'pervasive' enough to sustain a hostile work environment claim. ... Alternatively, [the] harassing conduct, although wholly inappropriate, was not 'severe' enough to support Higgins's hostile work environment claim." (citation omitted)).

If so, DISD argues that it still cannot be vicariously liable for Mr. Santos's conduct because it is entitled to the *Ellerth/Faragher* affirmative defense.

> Normally an employer is strictly liable for a supervisor's harassment of an individual whom he or she supervises. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The *Ellerth/Faragher* affirmative defense is an exception and is available to employers where a plaintiff alleges sexual harassment by a supervisor but does not claim that the harassment resulted in a tangible employment action. *Id.*
>     The defense has two elements. First, the employer must show that it exercised reasonable care to prevent and correct sexual harassment. Second, it must establish that the employee unreasonably failed to take advantage of preventive or remedial opportunities provided by the employer. *See E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 462 (5th Cir. 2013) (en banc). The employer bears the burden of proving both elements by a preponderance of the evidence. *Id.*

*Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 209-10 (5th Cir. 2016) (citations modified).

First,

> it is undisputed that [Mr. Santos] played no role in [the decision to not renew Ms. Wilson's contract] nor took any tangible employment action against [Ms. Wilson]. As a result, any harassment or other conduct by [Mr. Santos] did not culminate in [Ms. Wilson's non-renewal] or any other tangible employment action, as required to hold [DISD] strictly liable for [Mr. Santos's] conduct. Consequently, [DISD] may raise the affirmative *Faragher/Ellerth* defense.

*E.g., Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975,

at *26 (collecting cases).

And DISD has shown beyond peradventure – "[i]n other words, beyond doubt," *Pellerin v. Xspedius Comnc'ns LLC*, No. 04-1647, 2005 WL 3311434, at *1 n.3 (W.D. La. Dec. 5, 2005) (cited in *Lopez v. City of Dallas*, No. 3:03-cv-2223-M, 2006 WL 1450520, at *10 (N.D. Tex. May 24, 2006)) – that there are no genuine and material fact disputes on either element of its *Ellerth/Faragher* affirmative defense.

It is not disputed that DISD "maintained and published to employees a written policy prohibiting sexual harassment in the workplace and articulating specific directions for employees to follow in reporting or complaining about such alleged harassment." Dkt. No. 29 at 59 (citing App. 221-225 (Harris Dec. Ex. 4-G); App. 23 (Pl. Dep. 91:6-92:22)). And it is further not disputed that, on February 24, 2016, Ms. Wilson complained to Ms. Walker of (at most) three instances of harassment by Mr. Santos, all occurring in February 2016. See App. 50, 135-136 (Pl. Dep. 197:4-199:12, Ex. 31). The undisputed evidence further reflects that Ms. Walker investigated and then reassigned Ms. Wilson to another evaluator. *See* App. 53 (Pl. Dep. 211:6-212:6). But, to the extent that Ms. Wilson had other complaints about Mr. Santos's behavior, such as those she reported during her deposition (numbered three through seven above), she did not raise those complaints through DISD's established remedial opportunities while she was employed by DISD.

As noted above, none of Ms. Wilson's allegations are sufficiently severe alone, and she only establishes that the harassment complained of altered the terms of her employment, if at all, due to the number of incidents Ms. Wilson reported during her

-14-

deposition. But that she (at most) only reported three of those incidents using DISD's established reporting policies while employed with DISD undercuts the pervasiveness of the conduct, providing undisputed evidence showing that DISD has proven the second prong of the *Ellerth/Faragher* affirmative defense. *See Ellerth*, 524 U.S. at 764 ("To the extent limiting employer liability could encourage employees to report harassing conduct before it becomes severe or pervasive, it would also serve Title VII's deterrent purpose."); *E.E.O.C. v. Wyndham Worldwide Corp.*, No. C07-1531RSM, 2008 WL 452974, at *2 (W.D. Wash. Oct. 3, 2008) (noting that the second prong of "[t]he affirmative defense is intended to encourage ... employees to report harassing conduct before it becomes severe or pervasive." (citation omitted; emphasis added)); *Sobolak v. CW&W Contractors, Inc.*, Civ. A. No. 15-1711, 2018 WL 522782, at *9 (W.D. La. Jan. 22, 2018) (same, further noting that, "[w]hen an employee fails to report alleged harassment, it deprives the employer of the opportunity to correct the behavior").

The Court should therefore grant DISD summary judgment on its affirmative defense to this claim and dismiss Ms. Wilson's hostile work environment sexual harassment claim with prejudice.

III.   Retaliation

Ms. Wilson alleges that, after she reported harassment by Mr. Santos, DISD retaliated by not renewing her contract and by not providing her "support" after she "was assaulted by students on numerous occasions," causing her to resign "prior to the end of the 2015-16 school year" out of "fear for her safety." Dkt. No. 3 at 2.

A plaintiff establishes a prima facie case of retaliation under Title VII by

showing that (1) he engaged in an activity protected under the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See McCoy*, 492 F.3d at 557; *Outley*, 840 F.3d at 219.

> For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Specifically, a plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).
> Title VII's anti-retaliation provisions do not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* However, retaliatory adverse employment actions also need not rise to the level of ultimate employment decisions. *Id.*; *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009). [And], when determining whether an allegedly retaliatory action is materially adverse, courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among ... coworkers.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

*Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (citation modified).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see, e.g.*, *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate, nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)).

Here, even if Ms. Wilson has made out a prima facie retaliation claim – that is, to the extent that evidence reflects that the decision not to renew her contract is close enough in time to the complaints she made concerning Mr. Santos, *see, e.g., Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("*Nassar*'s heightened but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework. At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013))) – DISD has produced undisputed evidence that Ms. Wilson's performance and conduct drove the decision not to renew her contract. As DISD explains,

> Plaintiff made her first complaint of sexual harassment to Walker on February 24, 2016. App. 50, 135-136 (Pl. Dep. 197:4-199:12, Ex. 31). However, Plaintiff admits that well before this time she understood Dallas ISD had concerns about her performance and conduct. It is undisputed that prior to her February 24, 2016 complaint, Plaintiff: (1) received numerous unsatisfactory spot observations from Santos; (2) received one unsatisfactory extended observation from Santos; (3)

> received one unsatisfactory observation report from her PACE Field Supervisor; (4) had been placed on two Teacher Intervention Plans for her poor performance and conduct; and (5) Walker and Colbert had separately counseled her regarding her unprofessional conduct. (Walker Dec. ¶¶ 11-13); App. 226-227 (Colbert Dec. ¶¶ 3-4). Significantly, Walker began gathering the information needed to support a non-renewal recommendation prior to the February 24, 2016 complaint. App. 184-185 (Walker Dec. ¶ 18); App. 195 (Harris Dec. ¶ 9).

Dkt. No. 59 at 34-35.

Any temporal proximity notwithstanding, Ms. Wilson has not come forward with evidence to show that a retaliatory motive was the but-for cause for DISD's decision not to renew her contract. *See Garcia*, 938 F.3d at 243-44 ("Temporal proximity gets [a plaintiff] through his prima facie case but does not, on its own, establish that the company's stated explanation for [his] firing was mere pretext. At the pretext stage, the Supreme Court's decision in *Nassar* requires a showing of but-for causation, which requires more than mere temporal proximity." (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) ("After the employer states its [legitimate] reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive" (citations and internal quotation marks omitted))))).

The Court should therefore grant DISD summary judgment on this claim and dismiss Ms. Wilson's retaliation claim with prejudice.

## Recommendation

The Court should grant Defendant Dallas Independent School District's motion for summary judgment [Dkt. No. 58] and dismiss Plaintiff Bellanca Wilson's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 17, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE